# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
August 19, 2003 Session

## JAMES EUGENE PARKS, JR. v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**Nos. 68414, 68415     Richard R. Baumgartner, Judge**

_____

**No. E2002-02816-CCA-R3-PC**
**October 17, 2003**
_____

The petitioner, James Eugene Parks, appeals the Knox County Criminal Court's denial of his petitions for post-conviction relief from robbery-related convictions. He contends that he did not voluntarily enter guilty pleas because he was under the influence of alcohol at the time of the pleas. He also claims that he received the ineffective assistance of counsel because his attorneys did not investigate the case adequately. We affirm the trial court's denial of the petitions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Lisa B. Morton, Knoxville, Tennessee, for the appellant, James Eugene Parks, Jr.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; Marsha Mitchell, Assistant District Attorney General; and Culver Schmid, Special Prosecuting Attorney, for the appellee, State of Tennessee.

## OPINION

The petitioner seeks relief from his 1998 guilty pleas to ten counts of aggravated robbery, a Class B felony, and one count of attempted aggravated robbery, a Class C felony. The petitioner was charged in 1995 with aggravated robbery and in 1998 with the other offenses. Pursuant to agreement, on August 25, 1998, the trial court sentenced the petitioner as a Range I, standard offender to an effective forty-year sentence for the 1995 and 1998 offenses. The petitioner contends (1) that he was incompetent at the time he entered the guilty pleas, rendering them involuntary, and (2) that he received the ineffective assistance of counsel because his attorneys failed to investigate the case adequately.

At the post-conviction evidentiary hearing, the petitioner testified that at the time of the guilty pleas he was either intoxicated or suffering from severe alcohol withdrawal. He said the condition

made it impossible for him to understand the plea agreement. He said he drank about one fifth of gin and one six-pack of Zima per day before he went to jail. He said that while in jail he drank homemade wine but that this was much less alcohol than he drank before going to jail. He said the lessened amount of alcohol caused his hands to shake and his thoughts to be unclear.

The petitioner testified he met with his attorney, Aubrey Davis, three times for about twenty minutes each time before entering the guilty pleas. He said he met with his attorney from the 1995 offense, Paul Hensley, one time after his arrest on July 9, 1998. The petitioner said Mr. Davis never discussed the case with him except to tell the petitioner he was friends with the petitioner's mother and to discuss plea negotiations with the state. He said Mr. Davis told him he could be sentenced to one hundred years if he went to trial. He said that he did not understand the difference between consecutive and concurrent sentencing at the time of his guilty pleas and that he did not remember either of his attorneys explaining the difference to him. He said that on the day of the guilty pleas, he was very passive and only wanted to get the proceedings over with so he could lie down. On cross-examination, the petitioner acknowledged that he did not see a doctor about his problems from alcohol withdrawal.

Aubrey Davis testified that he had been an assistant public defender for six years at the time of the petitioner's guilty plea hearing and that he had represented many clients who had alcohol problems during these six years. He said he met with the petitioner five to six times before the guilty plea hearing. He said he also met with the prosecuting attorney to see if there would be a plea offer. He said he told the petitioner he could be sentenced to one hundred and twenty years if he was found guilty at trial. He said that in one meeting with the petitioner, the petitioner told him to resolve matters as quickly as possible. Mr. Davis said he then began focusing on a plea agreement.

Mr. Davis testified that the petitioner mentioned his alcohol use but said he did not have withdrawal problems after the first couple of nights in jail. Mr. Davis said that he never saw the petitioner have difficulty concentrating or shake excessively, and that he never smelled alcohol on the petitioner's breath. He said he discussed different trial options with the petitioner and advised him about the witnesses' testimony and the impact of his statement to the police at a trial. He said the petitioner always seemed clearheaded during their discussions and did not seem intoxicated on the day of the guilty pleas. He said that he gave the petitioner the best representation he could under the circumstances and that he would have gone to trial if the petitioner had requested it.

On cross-examination, Mr. Davis admitted having approximately one hundred active cases while representing the petitioner. He said he talked to the detective assigned to the petitioner's case, visited one of the crime scenes, and interviewed at least six witnesses during his investigation. He said he did not interview more witnesses because once a client told him to resolve the cases, he shifted his focus to obtaining a plea agreement. He said that he reviewed the arrest warrant with the petitioner and that he asked the petitioner about the facts described in the warrant. He said he looked at the petitioner's statement to the police and determined there was no way to get it suppressed.

Paul Hensley testified that he represented the petitioner on two aggravated robbery charges from 1995. He said he had been working on a probation offer for the petitioner until the petitioner was arrested on eleven additional charges of aggravated robbery in 1998. He said his trial strategy changed at that point because of the overwhelming evidence against the petitioner and because he suspected that the co-defendants from the 1995 offenses were going to testify against the petitioner. He said that he met with the petitioner about five times prior to his 1998 arrest and that the petitioner did not show up for several scheduled meetings during this time. He said they discussed strategy and the petitioner's legal goals during these meetings.

Mr. Hensley testified that the petitioner seemed physically fine during their meetings but that he did smell alcohol on his breath on one occasion. He said that on the day of the guilty pleas, the petitioner seemed fine and that he did not smell alcohol on the petitioner. He said he and Mr. Davis worked hard to get the best offer possible for the petitioner. On cross-examination, he said that he would have gone to trial if the petitioner had asked but that "the cards were kind of coming down." He said when the petitioner went to jail in 1998, he always met the petitioner with Mr. Davis so they could best coordinate their representation of the petitioner. He acknowledged he had approximately one hundred active cases while representing the petitioner.

The transcript of the guilty plea hearing reflects that the petitioner stated he was twenty-nine years old, had attended school through the eleventh grade, and could read and write. He agreed that he was pleading guilty freely and voluntarily and that no one was forcing him to plead guilty. He agreed that he had discussed his case with his attorneys and acknowledged that he had no complaints about his attorneys' representation. He said he had no questions about his guilty pleas. He agreed that he was not under the influence of alcohol or drugs and that nothing should interfere with his ability to understand what was going on at the hearing. The trial court reviewed with the petitioner his constitutional rights and the rights the petitioner was relinquishing by pleading guilty. The trial court noted that the petitioner seemed like a very intelligent, articulate young man. Both the state and the trial court stated the petitioner would be required to serve an effective forty-year sentence for the aggravated robberies and the attempted aggravated robbery.

At the post-conviction evidentiary hearing, the trial court found that the petitioner's attorneys properly handled and investigated the case and that they went the "extra mile" for the petitioner. The trial court found that its statement at the guilty plea hearing that the petitioner seemed like an intelligent, articulate young man showed that he made voluntary and knowing guilty pleas. It found that the petitioner's testimony at the evidentiary hearing, particularly the petitioner's claim that he did not understand what he was doing due to the influence of alcohol, was not credible. The trial court denied the petition.

### I. VOLUNTARINESS OF THE GUILTY PLEA

The petitioner contends that his guilty pleas were not voluntary because he was either intoxicated or experiencing severe symptoms of alcohol withdrawal at the time of the guilty plea

hearing. The state contends that the record supports the trial court's finding that the pleas were voluntary. We agree with the state.

In a post-conviction case, the burden is on the petitioner to prove his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). On appeal, we are bound by the trial court's findings unless we conclude that the evidence preponderates against those findings. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The petitioner has the burden of illustrating how the evidence preponderates against the judgment entered. Id. This court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the trial court. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Questions concerning the credibility of witnesses and the weight and value to be given to their testimony are resolved by the trial court, not this court. Id.

In order for a conviction based upon a guilty plea to comport with due process, the plea must be voluntarily, knowingly, and understandingly entered. Boykin v. Alabama, 395 U.S. 238, 242-44, 89 S. Ct. 1709, 1712 (1969). A guilty plea is not voluntary "if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43, 89 S. Ct. at 1712). Furthermore, if an accused is incompetent, then the guilty plea is involuntary. Blankenship, 858 S.W.2d at 904. The standard for assessing the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). To assess whether a guilty plea was voluntary, we must "consider all of the relevant circumstances that existed when the plea was entered." State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). These circumstances include:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship, 858 S.W.2d at 904.

In the present case, the trial court found that the petitioner knowingly, voluntarily, and intelligently entered his guilty pleas. Although the trial court said it did believe the petitioner when he stated he had an alcohol problem, the trial court found the petitioner's claim that he did not understand the consequences of his guilty pleas until he was no longer under the influence of alcohol incredible. The record does not preponderate against the trial court's findings. Although the petitioner had an alcohol problem, both attorneys testified that they reviewed the state's evidence and the elements of the offenses with him and that he seemed clearheaded at that time. The guilty plea transcript reveals that the court carefully reviewed the rights that the petitioner was waiving and

confirms the trial court's findings that the petitioner responded appropriately to questions. The petitioner, who claims to have abused alcohol since the age of nineteen, reported no problems to any medical personnel while in jail or before his 1998 arrest. Although the record does not reveal that the petitioner had any significant experience with criminal proceedings, the petitioner stated at the guilty plea hearing that he understood the rights that he was waiving, that he knew that the decision to plead guilty was his alone, and that he was not under the influence of alcohol or drugs. Finally, the trial court and the petitioner's attorneys said the petitioner was articulate and seemed normal at the guilty plea hearing.

As the United States Supreme Court has noted, a petitioner's testimony at a guilty plea hearing "constitutes a formidable barrier" in any subsequent collateral proceeding because "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73, 97 S. Ct. 1621, 1629 (1977). The trial court credited the petitioner's testimony at his guilty plea hearing over his post-conviction testimony. Nothing in the record before us dispels the reliability of the petitioner's testimony at his guilty plea hearing. The petitioner has failed to prove by clear and convincing evidence that his guilty pleas were involuntary.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends that his attorneys failed to investigate his case or prepare for trial adequately, resulting in ineffective assistance of counsel. As evidence of their lack of investigation, he points to the fact that his attorneys had large caseloads and only thirty days to investigate, prepare, and negotiate before concluding plea negotiations. He summarily argues that his attorneys' failure to try to suppress his statement to the police shows their preparation was inadequate. He asserts his attorneys did not discuss his case with him before his guilty pleas and faults them for not discussing the substance of his cases during their conversations. He argues that the cumulative effect of these deficiencies creates a reasonable probability that he would not have pled guilty had his attorneys rendered effective representation. The state responds that the attorneys were not ineffective. We agree with the state.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show that (1) counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). When a petitioner claims that the ineffective assistance of counsel resulted in a guilty plea, the petitioner must prove that counsel performed deficiently and that but for counsel's errors, the petitioner would not have pled guilty and would have insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

In <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in <u>Beasley v. United States</u>, 491 F.2d 687, 696 (6th Cir. 1974) and <u>United States v. DeCoster</u>, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. at 2065; <u>see</u> <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982). Because there are mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a <u>de novo</u> standard with no presumption of correctness. <u>Fields v. State</u>, 40 S.W.3d 450, 456 (Tenn. 2001).

In the present case, the petitioner has failed to show by clear and convincing evidence that he would not have pled guilty if the investigation or preparation had been more extensive. The petitioner has also failed to show that his trial attorneys performed ineffectively. The fact that the attorneys did not meet with the petitioner in the jail more than three to six times does not necessarily indicate deficient performance. The attorneys testified that they interviewed at least six witnesses, discussed the case with the lead investigator, and visited one crime scene. Moreover, the attorneys said they fully discussed with the petitioner his rights and options in the case. The attorneys said they vigorously sought to obtain the best sentence possible for the petitioner under the circumstances. The petitioner did not present any evidence that any greater preparation or investigation would have uncovered anything that would have altered his pleas.

The record also does not indicate that the petitioner was entitled to suppression, thereby being prejudiced by his attorneys' failure to address the issue. This court has stated that if arguable grounds exist to suppress incriminating evidence, then an attorney, as a zealous advocate for the client, should move to suppress that evidence. <u>See</u> <u>Robert C. Bellafant v. State</u>, No. 01C01-9705-CC-00183, Maury County, slip op. at 10 (Tenn. Crim. App. May 15, 1998). Mr. Davis testified, however, that there was nothing available to challenge regarding the petitioner's statements to the police. We note that the petitioner did not claim at the post-conviction hearing that the police obtained the statements in violation of his constitutional rights. The petitioner has not shown that his attorneys were ineffective.

Based upon the foregoing and the record as a whole, we affirm the judgments of the trial court.

 

 

_____
JOSEPH M. TIPTON, JUDGE